**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1521
_____

CHRISTOPHER BAINBRIDGE;
KELLY BAINBRIDGE, Individually and as h/w,

Appellants

v.

U.S. BANK, N.A. AS TRUSTEE FOR THE C-BASS MORTGAGE
LOAN TRUST ASSET-BACK CERTIFICATES SERIES 2007-CB6;
OCWEN LOAN SERVICING LLC, f/d/b/a AHMSI; UDREN LAW OFFICES, P.C.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-16-cv-00411)
District Judge: Honorable Malachy E. Mannion
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on January 13, 2023

Before: JORDAN, PHIPPS and ROTH, *Circuit Judges*

(Opinion filed: November 7, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

JORDAN, *Circuit Judge*

Christopher and Kelly Bainbridge sued U.S. Bank, N.A. and Ocwen Loan Servicing LLC, alleging violations of the Fair Debt Collection Practices Act (FDCPA) and Pennsylvania's Dragonetti Act. 15 U.S.C. § 1692, et seq.; 42 Pa. Cons. Stat. § 8351, et seq. The District Court entered summary judgment against the Bainbridges, and they now appeal.[1] The Bainbridges also contend that the District Court should not have ruled that their expert's proposed testimony was inadmissible and should have compelled U.S. Bank and Ocwen to divulge attorney-client privileged communications.

For the reasons that follow, we will affirm.

## I.   BACKGROUND[2]

U.S. Bank is a mortgage lender and Ocwen, a loan servicer, and they sued the Bainbridges for foreclosure in Pennsylvania state court. The Bainbridges won that round. The state court said Ocwen's sole witness did not know when the Bainbridges began to default on their payments, and the court expressed "serious concerns as to whether all payments to [the prior loan servicer] on this loan were accounted for correctly." (J.A. at 954 n.1.) Nonetheless, it held that, based on the evidence, "Ocwen believed it had taken over servicing of a delinquent account[.]" (J.A. at 954 n.1.) The Bainbridges themselves, at least at one point, acknowledged that the primary purpose of U.S. Bank's and Ocwen's

---

[1] They concede their FDCPA claims so we only consider their Dragonetti Act claim. (Reply Br. at 1–2, 10–11.)

[2] A protracted and complex procedural history preceded this dispute. Because we write primarily for the parties, we discuss the facts and proceedings only to the extent necessary to resolve this matter.

lawsuit was to recover a loan that those entities believed was due. (J.A. at 523:4–9, 524:21–525:16, 590:10–15.)

After their win in the foreclosure action, the Bainbridges turned the tables on U.S. Bank and Ocwen and sued them for wrongful use of civil proceedings, invoking Pennsylvania's Dragonetti Act. The Dragonetti Act holds a party liable when, in filing or continuing a lawsuit, that party acted "in a grossly negligent manner or without probable cause and primarily" for an improper purpose. 42 Pa. Cons. Stat. § 8351(a). According to the Bainbridges, U.S. Bank and Ocwen knew or should have known that the foreclosure action lacked evidence, and suing "to collect monies which were not owed" is an improper purpose. (Dist. Ct. Docket 99 at 9.)

As noted earlier, the District Court ruled for U.S. Bank and Ocwen on summary judgment, saying the Bainbridges "have produced no evidence that the foreclosure action was filed for any other purpose than to foreclose on the property." (J.A. at 107.) That was enough to defeat the Dragonetti Act claim.

On appeal, the Bainbridges fault the District Court for failing to infer improper purpose from gross negligence and lack of probable cause. They also contend that the District Court abused its discretion in discovery. First, they say, the Court should have pierced U.S. Bank's and Ocwen's attorney-client privilege under the crime-fraud exception and so permitted discovery concerning improper purpose. Second, they argue that the Court should have allowed their expert to testify about the standard of care in mortgage foreclosures.

## II. DISCUSSION[3]

### A. U.S. Bank and Ocwen are not liable under the Dragonetti Act because no reasonable jury could find that the forfeiture suit was filed for an improper purpose.

Pennsylvania's Dragonetti Act targets the improper use of civil proceedings. *McNeil v. Jordan*, 894 A.2d 1260, 1274 (Pa. 2006). To prevail, a Dragonetti Act plaintiff bears the "heavy burden" of showing by a preponderance of the evidence that the defendant lacked probable cause or acted with gross negligence in bringing or continuing the underlying case and that the proceedings were initiated or continued for an improper purpose. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002); 42 Pa. Cons. Stat. §§ 8351(a), 8354; *Mi-Lor, Inc. v. DiPentino*, 654 A.2d 1156, 1157–58 (Pa. Super. Ct. 1995). The plaintiff must also show that he won the underlying case and was damaged by its initiation or continuation. 42 Pa. Cons. Stat. § 8354(2), (5).

A Dragonetti Act defendant establishes probable cause if he demonstrates that he "'reasonably believe[d]' in the facts on which [his lawsuit was] based *and* in the viability of the legal theory under which it [was] brought." *Gentzler v. Atlee*, 660 A.2d 1378, 1382 (Pa. Super. Ct. 1995) (quoting 42 Pa. Cons. Stat. § 8352). A defendant is grossly negligent if he lacks even "slight diligence or care," or behaves "in reckless disregard of a

---

[3] The District Court had diversity jurisdiction under 28 U.S.C. § 1332. It also had jurisdiction over the FDCPA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo, "view[ing] the facts in a light most favorable to the nonmoving party" to determine whether "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 530 (3d Cir. 2006). A dispute is "'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

legal duty and of the consequences to another party[.]" *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001).

Even if a defendant lacked probable cause to file the underlying lawsuit or acted with gross negligence, he will not be liable under the Dragonetti Act unless he also brought or continued the suit for an improper purpose. *See Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. Ct. 1999) (analyzing improper purpose after deciding lack of probable cause.). Section 8354, entitled "Burden of proof" lists "probable cause" separately from improper purpose. *Id.* at (3) - (4).[4]

An improper purpose is one other than "securing the … adjudication of the claim on which" the lawsuit is based. 42 Pa. Cons. Stat. § 8354(4). For example, a party can claim to sue for defamation when their primary purpose is securing the defendant's silence. *See Bannar v. Miller*, 701 A.2d 242, 245, 249 (Pa. Super. Ct. 1997) (defamation action "brought for an improper purpose, namely to prevent appellees from exercising their rights under the First Amendment").

Whether a defendant acted primarily for an improper purpose is a question of fact. *See* Restatement (Second) of Torts § 673(2)(b) ("In an action for malicious prosecution … the jury determines … whether the defendant acted primarily for a purpose other than that of bringing an offender to justice.").

---

[4] Section 8354 does not mention "gross negligence." But the Bainbridges concede that improper purpose is always necessary. (*See* Opening Br. at 18 ("Even if a party lacked probable cause or acted with gross negligence in filing a suit, that party is not liable under the Dragonetti Act unless the suit also was filed for an improper purpose.").)

The District Court determined that "the defendants brought the foreclosure action for the primary purpose of foreclosing on the Bainbridges' property and to recoup monies owed on their loan[,]" which "constitutes an adjudication of the claim on which the proceedings were based." (J.A. at 107.) At deposition, both Bainbridges admitted that U.S. Bank and Ocwen did not bring the suit to harass or for some motive other than recouping money thought to be due. (J.A. at 523:4–9, 524:21-525:16, 590:10–15.) The state judge presiding over the foreclosure action also found, based on the evidence, that "Ocwen believed it had taken over servicing of a delinquent account." (J.A. at 954 n.1.)

Despite all of that, the Bainbridges argue that the District Court did not evaluate whether U.S. Bank and Ocwen lacked probable cause or acted with gross negligence in bringing and continuing the foreclosure action. (Opening Br. at 19–20.) But the Court did not have to undertake that analysis because, as the Bainbridges concede (Opening Br. at 18), a Dragonetti Act plaintiff must always show improper purpose to succeed. Because no reasonable jury could find that U.S. Bank and Ocwen had an improper purpose, the Bainbridges cannot succeed on their Dragonetti Act claim.

The Bainbridges also say that the District Court should have inferred improper purpose from U.S. Bank's and Ocwen's gross negligence or lack of probable cause.[5]

---

[5] The Bainbridges forfeited their gross negligence and probable cause arguments to the extent they rely on the continuation of the foreclosure suit. Before the District Court, the Bainbridges argued only that U.S. Bank and Ocwen lacked probable cause and were grossly negligent in *filing* the foreclosure action. (*See* Dist. Ct. Docket 99 at 4, 8.) They never argued that there was gross negligence or a lack of probable cause in continuing the action. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013) ("We generally refuse to consider issues that the parties have not raised below.")

6

(Opening Br. at 19–20.) Although Pennsylvania courts have written that an improper purpose *may* be inferred from a lack of probable cause, they have hesitated to make that inference without at least some evidence of improper purpose. *See, e.g.*, *Gentzler*, 660 A.2d at 1385 (declining to dismiss the claim where "[plaintiff] alleged facts of improper purpose, namely to harass or maliciously injure [plaintiff], and unnecessarily to delay and increase the cost of litigation"); *Broadwater*, 725 A.2d at 785 (finding a genuine issue of fact as to whether the lawyer brought the underlying action for personal financial gain in addition to his client's interests); *Miller v. Pennsylvania R.R. Co.*, 89 A.2d 809, 813 (Pa. 1952) ("It is highly significant that no attempt is made to show malice except by inference because of alleged lack of probable cause. It is true that such an inference of the existence of malice is permissible, but it has rarely been sufficient unaided by some showing of private motive.").

Accordingly, we will affirm the District Court's determination that U.S. Bank and Ocwen are not liable under the Dragonetti Act.

---

Judge Roth would vacate and remand to the District Court to determine whether the Bainbridges demonstrated that U.S. Bank and Ocwen were grossly negligent or lacked probable cause in bringing the foreclosure action, whether U.S. Bank and Ocwen had an improper purpose in *continuing*, and not merely filing, the action, and whether it should infer improper purpose from want of probable cause. But we will affirm because a Dragonetti Act plaintiff must always show improper purpose. And, as we've already noted, the Bainbridges have forfeited any argument about the continuation of the suit. Finally, Pennsylvania Courts hesitate to make the improper purpose inference without some evidence thereof.

**B.　　The District Court did not abuse its discretion in preserving U.S. Bank's and Ocwen's attorney-client privilege.[6]**

Before the District Court, the Bainbridges argued that the privilege ought to be pierced because U.S. Bank and Ocwen relied on the advice of counsel as an affirmative defense. (Supp. App. at 26–27.) Attorney-client privilege is waived when "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). However, "[a]dvice is not in issue merely because it is relevant[.]" *Id.* The District Court correctly concluded that U.S. Bank and Ocwen did not attempt to prove a claim or defense by disclosing or describing a protected communication. (J.A. at 79–81; *see also* Dist. Ct. Docket 39 at 6–8 (listing U.S. Bank and Ocwen's affirmative defenses).) And the Bainbridges did not assert otherwise. In their brief, they cite the standard for "advice of counsel" waiver but do not demonstrate how U.S. Bank and Ocwen waived the privilege. (Supp. App. at 26–27.) In short, the District Court did not abuse its discretion in preserving U.S. Bank and Ocwen's attorney-client privilege.

The Bainbridges also assert a crime-fraud theory to pierce the privilege. (Opening Br. at 25–28.) Because they bring it up for the first time on appeal, however, they have forfeited that argument. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013) ("We generally refuse to consider issues that the parties have not raised below.").

---

[6] We review decisions regarding the waiver of attorney-client privilege for abuse of discretion. *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 524 (3d Cir. 1996).

### C. The District Court did not abuse its discretion in denying admission of the Bainbridges' expert testimony.[7]

An expert cannot usurp the district court's role by testifying regarding the governing law or offering legal opinions. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (citing Fed. R. Evid. 704). The District Court here determined that the Bainbridge's expert report did not explain "any industry policies, customs or practices relative to the plaintiffs' case[.]" (J.A. at 89.) Instead, it was "a legal brief in support of plaintiffs' Dragonetti claim." (J.A. at 89.) The Bainbridges concede that "the court was correct to strike testimony regarding conclusions of law[.]" (Opening Br. at 28.) They argue only that the expert "was prepared to testify" regarding industry standards of care. (Opening Br. at 28–29.) But a reasonable reading of the expert report allows the conclusion that it did not argue for an industry standard of care, nor did it apply industry standards to the facts. Instead, it explored the case's history, described Dragonetti Act and Pennsylvania mortgage law, and applied the law to the facts. The District Court did not abuse its discretion in determining that the expert's proposed testimony invaded the province of the court and was therefore inadmissible.

## III. CONCLUSION

For the foregoing reasons, we will affirm.

---

[7] We review decisions regarding the admissibility of expert testimony for abuse of discretion. *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999).